# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF ALABAMA
# NORTHERN DIVISION

| | | |
|---|---|---|
| EMILY SIZEMORE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. |
| | ) | |
| CITY OF MONTGOMERY, | ) | JURY TRIAL DEMANDED |
| ALABAMA, a municipal corporation; | ) | |
| ERNEST FINLEY, individually and in his | ) | |
| official capacity as | ) | |
| Montgomery Chief of Police; and | ) | |
| MONTGOMERY POLICE | ) | |
| DEPARTMENT OFFICER, individually, | ) | |
| | ) | |
| Defendants. | ) | |

## COMPLAINT

1. This is an action for deprivation of civil rights under the Civil Rights Act, pursuant to 42 U.S.C. §1983, and under state law. Plaintiff brings this civil rights action to redress the deprivation under color of state law of the rights, privileges and immunities that were secured to the Plaintiff by the laws and Constitution of the United States and the State of Alabama.

## JURISDICTION

2. This Court has jurisdiction over the claims in this lawsuit pursuant to 28 U.S.C. §§ 1331, 1343(a)(3) and (4), and 1367.

## VENUE

3. A substantial part, if not all of the unlawful acts alleged herein, occurred in the City of Montgomery, Alabama, located within this judicial district. Thus, venue in this Court is proper pursuant to 28 U.S.C. §1391(b)(2).

4. At all times material to Plaintiff's claims, the Defendants were state actors acting under color of state law.

## STATEMENT OF THE PARTIES

5. Plaintiff, Emily Sizemore, is an African-American female over the age of nineteen (19) years and a citizen of the State of Alabama and brings this lawsuit on behalf of herself.

6. Defendant the City of Montgomery, Alabama is a municipal corporation created by the State of Alabama and is located within Montgomery County, Alabama.

7. Defendant Ernest Finley is an individual over nineteen (19) years of age and a citizen of the United States. Defendant Finley was the Chief of Police for Montgomery at all times relevant to this Complaint. As such, he was the commanding officer for Defendant Montgomery Police Department Officer and was responsible for Defendant Officer's training, supervision and conduct.

8. Defendant Montgomery Police Department Officer is a Caucasian male over nineteen (19) years of age and a citizen of the United States. Defendant Officer was perceived to approximately stand 5 feet and 5 inches tall and weigh 180 pounds. At all times relevant to this Complaint, Defendant Officer was a Montgomery Police Officer. As an agent of Montgomery Police, Defendant Officer acted with the authority invested by the Montgomery Police Department, and is a state actor under 42 U.S.C. §1983. Defendant Officer attacked and arrested Plaintiff at 4405 Ray Drive, Montgomery, Alabama 36109 on the night of April 9, 2021.[1]

9. The actions of Defendants complained of herein, individually and/or in conjunction with other employees of the City of Montgomery, Alabama and the Montgomery Police

---

[1] At the time of the filing of this Complaint, Plaintiff is unaware of Defendant Officer's full name. However, upon information and belief, Defendant Officer's last name is "Doorman." When Defendant Officer's identity is revealed, Plaintiff will promptly make the appropriate substitution.

Department ("MPD") constitute the official policy, practice or custom of the MPD. Defendants' conduct represents a reckless or callous indifference to Plaintiff's rights. The violation of Plaintiff's constitutional rights resulted from the execution of a policy, custom or official decision. Defendant Finley's tacit approval of the use of excessive force, and his failure to exercise proper care in the training and/or supervising of his employees were proximate causes of the injuries suffered by Plaintiff.

10. All of the actions, omissions and conduct complained of were undertaken by the Defendants under color of state law.

## STATEMENT OF THE FACTS

11. On or around April 9, 2021, at around 11:30p, Plaintiff Sizemore was driving home after visiting her friend. At the time of this incident, Plaintiff was 25 years old.

12. When Plaintiff reached an intersection roughly one (1) mile away from her house, she noticed an MPD car (which was driven by Defendant Montgomery Police Department Officer) make a sudden U-turn and proceed to closely tailgate her.

13. Plaintiff was confused; however, Defendant Officer did not have his siren or emergency lights turned on. Understandably, Plaintiff did not think she did anything wrong.

14. Defendant Officer continued to closely follow Plaintiff until she reached the driveway of her house, which was located at 4405 Ray Drive, Montgomery, Alabama 36109. At no point did Defendant Officer turn his siren or emergency lights on, or otherwise give Plaintiff reason to believe that he intended to pull her over.

15. When Plaintiff pulled into her driveway, she noticed Defendant Officer pull in as well. At this point, Plaintiff was understandably frightened and confused as to why this officer had followed her for approximately one (1) mile to her own property. Once Plaintiff placed her vehicle

in park, Defendant Officer parked and proceeded to exit his patrol car. He immediately stormed to Plaintiff's car, shining a bright flashlight through her driver's side window (which was rolled up), and screaming for Plaintiff to "get out of the car!"

16. Plaintiff was visibly shaken and terrified at Defendant Officer's belligerent and unprovoked behavior. Plaintiff, afraid to exit her vehicle, opened her window and asked Defendant Officer the following: 1) why he followed her to her home and pulled onto her property without permission; 2) why he was screaming at her and treating her as though she had committed a felony; and 3) what violation had she committed to warrant such treatment. Defendant Officer ignored Plaintiff's valid questions and continued to yell at the top of his lungs for Plaintiff to "get out" of her vehicle.

17. When Plaintiff asked again what reason Defendant Officer had for pulling into her driveway and treating her in this manner, Defendant Officer bellowed, "if you don't open this fucking door in five (5) seconds, I'm going to break your window and drag you out!"

18. Upon hearing this threat, Plaintiff grew even more fearful, especially because she was facing this irate officer alone, near midnight, and knew she had done nothing wrong. Indeed, Plaintiff was a young widow and lived by herself. Because she was frightened for her life at this point, Plaintiff attempted to pull her phone out to contact the only person she could think of—her mother. However, because Plaintiff's hands were shaking and her mind was racing, she was unable to locate and call her mother's number. When Defendant Officer started counting to five (5), Plaintiff, terrified that Defendant Officer would carry out his threat of breaking her window and dragging her out, opened her door—however, instead of calming the belligerent officer, it only made him more aggressive causing him to act in a physically violent manner.

4

19. As soon as Plaintiff opened her car door, Defendant Officer suddenly slapped handcuffs on Plaintiff's wrists and forcefully yanked her arms—nearly breaking Plaintiff's wrists. Plaintiff's wrists immediately swelled up and, to this day, Plaintiff's wrists are discolored as a result of this vicious attack. While she was being attacked, Plaintiff continuously cried "what are you doing to me? There's no need for this. What did I do to deserve this?"

20. Defendant Officer then jumped on top of Plaintiff while she was still seated in the driver's seat of her vehicle. Defendant Officer was now physically on top of Plaintiff, face to face and straddled her. Plaintiff did not know why she was being attacked on her own property and feared for her life.

21. Once Defendant Officer was on top of Plaintiff in the straddle position, she saw him pull out a weapon from his waistband and shove it against her rib cage. At this point, Plaintiff was unsure whether the weapon was a gun, so she immediately began to plead with Defendant and raised her hands up to the best of her ability to demonstrate she was not resisting and had no weapon, as she was afraid that she would be killed.

22. Despite Plaintiff being handcuffed and raising her arms to signal surrender, not posing a serious threat to the officer, and not being a flight risk, Defendant Officer—while still straddling Plaintiff on her lap—proceeded to tase her at least three (3) times. At no point did Plaintiff attempt to fight or flee from the Officer. At no point did Plaintiff have a weapon or threaten the Officer. Rather, Plaintiff, a 5 ft. 2 in. 25 year old female simply wanted to know why this was happening to her as she attempted to go home.

23. Notably, TASER's training materials teach police officers that each automatic, cycle of the TASER creates a window of opportunity in which to safely restrain an individual and

that, after each cycle, police officers should reassess the effectiveness of the TASER and consider other alternatives if the TASER does not cause its intended effect.

24. After tasing her multiple times, Defendant Officer then dragged Plaintiff out of the car and threw her against the side of her house, causing her head to hit the brick wall. As a result, Plaintiff fell to the ground. Despite Plaintiff being on the ground, handcuffed, tased multiple times, and having just hit her head, Defendant Officer continued to terrorize her. He stood over the whimpering Plaintiff, kneeing her, kicking her, and punching her several times in the back after she involuntarily rolled over after being kicked. All this time, Defendant Officer is taunting Plaintiff, shouting "you're going to jail!' Plaintiff continued to cry, "I didn't do anything. Why are you doing this to me?"

25. At no point during this egregious interaction did Defendant Officer inform Plaintiff of the reason he had pulled her over or the reason he was arresting and assaulting her.

26. Suddenly, Plaintiff noticed 4-5 MPD cars arriving at her house. Another officer approached Plaintiff and took her towards his patrol car. However, the irate Defendant Officer still attempted to assault Plaintiff, despite her being carried away by another officer. The new officer told Defendant Officer, "I got this, man." Plaintiff kept crying out "what is happening to me?" But, no one responded to her. The new officer placed Plaintiff in his patrol car and took her to the Montgomery City Jail.

27. Upon arriving to the city jail, Plaintiff was photographed and then taken back to the patrol car, where she was left to sit for at least one (1) hour. Then, Plaintiff was taken back inside the jail, where she was humiliated even further. Specifically, Plaintiff was on her menstrual cycle at this time and was instructed to fully undress and also to remove her used tampon in front of another officer.

28. Following this shameful (and unwarranted) encounter, Plaintiff was booked into the jail and was not released until she was bailed out the following morning. After she was released, the MPD informed Plaintiff that they did not have any of her belongings that were in her car at the time of her egregious attack and arrest, such as her ID and wallet.

29. Plaintiff later found out that she was not charged with any traffic-related offense, but instead had been charged with "harassment."[2]

30. Plaintiff suffered many injuries from the violent encounter she experienced, including, but not limited to: severe bruising all over her body; inflammation of her wrists; discoloration of her wrists; burn marks and entry wounds from being tased several times; embarrassment, humiliation, physical pain and severe mental anguish.

31. Prior to this abhorrent experience, Plaintiff had dreams of working in law enforcement. In fact, Plaintiff's mother worked and volunteered with the Montgomery Police Department. However, she is now not only petrified of law enforcement, but she experiences intense anxiety and traumatic flashbacks each time she leaves her house, as she fears being pulled over again. Due to this, Plaintiff was unable to work for approximately two (2) years.

32. Upon information and belief, the excessive force to which Plaintiff was subjected was a custom or practice of the MPD which was known to and ratified by Defendant Finley. Defendant Finley was aware of the use of excessive force by his officers but took no effective action to prevent personnel from engaging in such misconduct. More specifically, this was not the first instance that Defendant Finley was aware of his officers violating this law. *See Hill v. City of Montgomery, Alabama, et al.*, Civil Action No.: 2:20cv116; *Canty v. City of Montgomery, et al.*,

---

[2] The resulting criminal case (Case No.: 2021CRA000934) was dismissed and Plaintiff was not charged with any crime.

7

Civil Action No.: 2:20cv332; *Pettaway v. Barber, et al.*, Civil Action No.: 2:19cv8; *Gunn v. City of Montgomery, Alabama, et al.*, Civil Action No.: 2:16cv557.

33. Upon information and belief, Defendants City of Montgomery and Finley failed to take corrective action regarding the use of excessive force by the officers and failed to provide appropriate training and supervision regarding the proper use of force and the proper use of TASERs during the arrest and detention of individuals.

34. Defendant Finley's officers were not adequately trained about the appropriate use of force.

35. Defendant Finley's officers were not adequately trained about the appropriate use of TASERs.

36. Defendant Finley's officers were not properly supervised.

37. Upon information and belief, Defendant Finley's officers were not provided proper policies and procedures for the use of TASERs against persons like Plaintiff.

38. The policies and procedures at MPD were inadequate to ensure its officers were appropriately trained on how to properly pull a vehicle over; using physical force and the use of TASERs against persons like Plaintiff.

39. Plaintiff's injuries are proximately related to the failure and negligent training, and supervision of officers at MPD.

40. The critical failures and misconduct of these Defendants constitute a violation of Plaintiff's constitutional rights.

## COUNT I—EXCESSIVE FORCE
**Pursuant to the Fourth and Fourteenth Amendments of the United States Constitution Through 42 U.S.C. §1983**
**Against Defendants Ernest Finley and the City of Montgomery**

41. Plaintiff re-alleges and incorporates by reference paragraphs 11-40 above with the same force and effect as if fully set out in specific detail herein.

42. Defendants Finley and the City of Montgomery are responsible for the training, supervision and conduct of the police officers employed by MPD.

43. Defendants Finley and the City of Montgomery are responsible for providing training regarding the use of appropriate force upon the arrest of individuals and further are responsible for assuring that officers employed by MPD do not use excessive and unreasonable force in the arrest and detention of individuals. Defendants, with final policy-making authority for MPD, are causally connected to the violations of Plaintiff's constitutional rights.

44. Defendants were personally involved in and responsible for the excessive force used against Plaintiff in that (1) they created, maintained, or implemented a policy or custom under which individuals being detained or arrested would be subject to the use of excessive and unreasonable force; and (2) Defendants were deliberately indifferent in supervising and training Defendant Montgomery Police Department Officer—the subordinate who committed the wrongful acts described herein.

45. At the time of this incident, federal law clearly established that an officer commits excessive force when he or she continues to tase or strike an individual that is not resisting and had not committed a crime.

46. Defendants deprived Plaintiff of the rights, remedies, privileges and immunities guaranteed to every citizen of the United States, in violation of rights enforceable under 42 U.S.C.

§1983, including rights guaranteed by the Fourth and Fourteenth Amendments of the United States Constitution.

47. Defendant Montgomery Police Department Officer acted pursuant to the policies, regulations and decisions officially adopted or promulgated by those persons whose acts may fairly be said to represent official policy or were pursuant to a custom, usage or practice of the MPD.

### COUNT II—EXCESSIVE FORCE
**Pursuant to the Fourth and Fourteenth Amendments of the United States Constitution Through 42 U.S.C. §1983
Against Defendant Montgomery Police Department Officer**

48. Plaintiff re-alleges and incorporates by reference paragraphs 11-40 above with the same force and effect as if fully set out in specific detail herein.

49. Defendant Montgomery Police Department Officer intentionally and with willful disregard assaulted, tased, straddled, kicked, punched, and kneed Plaintiff, in addition to throwing her against a brick wall, as she surrendered and posed no threat to the safety of Defendant Officer or anyone else.

50. This use of excessive force was deliberate and intentional and was not objectively reasonable under the circumstances. Specifically, Defendant Officer recognized that Plaintiff did not present an immediate threat to him or anyone else. However, Defendant Officer viciously attacked Plaintiff, even despite her surrendering.

51. At the time of this incident, federal law clearly established that an officer commits excessive force when he or she continues to tase or strike an individual that is not resisting and had not committed a crime.

52. By using excessive force on Plaintiff, Defendant Officer deprived her of rights, remedies, privileges and immunities guaranteed to every citizen of the United States, in violation

of rights enforceable under 42 U.S.C. §1983, including rights guaranteed by the Fourth and Fourteenth Amendments of the United States Constitution.

53. The actions and/or inactions by Defendant Officer were of an intentional nature and manifested a conscious disregard of the well-being and constitutional rights of Plaintiff.

54. Defendant Officer acted under color of state law. Defendant acted willfully and he knowingly deprived Plaintiff of her constitutional rights secured through 42 U.S.C. §1983 and by the Fourth and Fourteenth Amendments of the United States Constitution, resulting in Plaintiff's physical and emotional injuries.

**COUNT III—FAILURE TO TRAIN AND SUPERVISE**
**Pursuant to the Fourth and Fourteenth Amendments of the United States Constitution**
**Through 42 U.S.C. §1983**
**Against Defendant the City of Montgomery**

55. Plaintiff re-alleges and incorporates by reference paragraphs 11-40 above with the same force and effect as if fully set out in specific detail herein.

56. Defendant, acting under color of state law, directly or indirectly deprived Plaintiff of her constitutional rights secured though 42 U.S.C. §1983, by the Fourth and Fourteenth Amendments of the United States Constitution, resulting in Plaintiff's unfortunate physical and mental injuries.

57. Defendant the City of Montgomery promulgated a custom or policy of inadequate training and supervision that led to the constitutional violations of Plaintiff.

58. Defendant knew of a need to adequately train and/or supervise the use of excessive force on individuals and the municipality made a deliberate choice not to do so or not to adequately do so.

59. Defendant had a duty to adequately train and supervise its agents and/or employees regarding the use of excessive force.

60. Defendant knew of a need to adequately train and/or supervise the use and/or effects of TASERs on individuals and the municipality made a deliberate choice not to do so.

61. Defendant had a duty to adequately train and supervise its agents and/or employees regarding the use and/or effects of TASERs. The need to properly train and supervise agents and/or employees on the use of TASERs is obvious because TASERs are a common weapon used by law enforcement on individuals.

62. Defendant Montgomery Police Department Officer's actions or inactions are causally related to Defendant the City of Montgomery's failure to train and supervise.

### COUNT IV—FAILURE TO TRAIN AND SUPERVISE
**Pursuant to the Fourth and Fourteenth Amendments of the United States Constitution Through 42 U.S.C. §1983**
**Against Defendant Ernest Finley**

63. Plaintiff re-alleges and incorporates by reference paragraphs 11-40 above with the same force and effect as if fully set out in specific detail herein.

64. Defendant Finley, acting under color of state law, directly or indirectly deprived Plaintiff of her constitutional rights secured through 42 U.S.C. §1983, by the Fourth and Fourteenth Amendments of the United States Constitution, resulting in Plaintiff's unfortunate physical and mental injuries.

65. Defendant had a duty to adequately train and supervise his agents and/or employees regarding the use of excessive force but failed to do so.

66. Defendant had a duty to adequately train and supervise his agents and/or employees regarding the use and/or effects of TASERs but failed to do so. The need to properly train and supervise agents and/or employees on the use of TASERs is obvious because TASERs are a common weapon used by law enforcement.

67. Defendant had knowledge, either actual or presumed, that his agents and/or employees were incompetent or in need of proper training and/or supervision. However, Defendant breached this duty by failing to adequately train and/or supervise his agents/employees. The incompetence of Defendant Montgomery Police Department Officer was the proximate cause of Plaintiff's severe injuries.

## COUNT V—FAILURE TO DISCIPLINE
**Pursuant to the Fourth and Fourteenth Amendments of the United States Constitution Through 42 U.S.C. §1983**
**Against Defendants Ernest Finley and the City of Montgomery**

68. Plaintiff re-alleges and incorporates by reference paragraphs 11-40 above with the same force and effect as if fully set out in specific detail herein.

69. Defendant Finley, acting under color of state law, directly or indirectly deprived Plaintiff of her constitutional rights secured through 42 U.S.C. §1983, and promulgated a custom or policy of deliberate indifference to the safety of individuals because of his failure to discipline and correct his officers for their improper use of force and improper use of TASERs.

70. Defendant and his agents had notice that their officers utilized excessive force and tased submitting individuals multiple times in the past.

71. As a proximate cause of Defendant's failure to discipline, MPD officers, such as Defendant Montgomery Police Department Officer, continued to use excessive force and improperly tase submitting individuals, amounting to a deliberate indifference to the health and safety of citizens such as Plaintiff.

72. Defendant's custom or policy of failing to discipline his officers was a proximate cause of Plaintiff's significant injuries, because Plaintiff was tased at least three (3) times despite having her hands up, straddled, thrown against a brick wall, kicked, kneed, and punched in the back, while on the ground and handcuffed.

73. The gross indifference by Defendant to the conduct of his officers, which includes repeated failures to follow policy and procedures, unnecessary use of excessive force and roughness during arrest procedures, led to the violation of Plaintiff's constitutionally protected rights. The failure of Defendant to take corrective action or to discipline after learning of instances of officer misconduct, and the failure to properly train the officers, led to these violations.

## COUNT VI—ASSAULT AND BATTERY
### Under Alabama Law
### Against Defendant Montgomery Police Department Officer

74. Plaintiff re-alleges and incorporates by reference paragraphs 11-40 above with the same force and effect as if fully set out in specific detail herein.

75. Defendant Montgomery Police Department Officer intended to, and did in fact, make violent physical contact with the Plaintiff. Defendant Officer's disturbing physical contact was conducted in an unwanted, unwelcome, harmful and/or offensive manner.

76. In Alabama, the elements of assault and battery are as follows: "'[A]n intentional, unlawful offer to touch the person of another in [a] rude or angry manner under such circumstances as to create in the mind of the party alleging the assault a wellfounded fear of an imminent battery, coupled with the apparent present ability to effectuate the attempt if not prevented. A successful assault becomes a battery, which consists of the touching of another in a hostile manner.'" *Ex parte Am. Heritage Life Ins. Co.*, 46 So. 3d 474, 477 (Ala. 2010) (quoting *Wright v. Wright*, 654 So. 2d 542, 544 (Ala. 1995)).

77. Based on the facts as stated in paragraphs 15-26, above, Defendant is liable for the assault and battery on Plaintiff.

78. As a proximate result, Plaintiff has suffered extreme harm including, but not limited to, injury including pain, humiliation, mental anguish and suffering.

## COUNT VII—INVASION OF PRIVACY
### Under Alabama Law
### Against Defendant Montgomery Police Department Officer

79. Plaintiff re-alleges and incorporates by reference paragraphs 11-40 above with the same force and effect as if fully set out in specific detail herein.

80. Based on the facts as stated in paragraphs 15-26, above, Defendant Montgomery Police Department Officer wrongfully invaded Plaintiff's physical and emotional sanctum by verbally and physically harassing her.

81. Defendant Officer's conduct constitutes a wrongful invasion, prying and intrusion, into the Plaintiff's physical and emotional sanctum.

82. Defendant Officer's wrongful intrusion was offensive and objectionable to a reasonable person.

83. Defendant Officer's wrongful intrusion caused outrage, mental suffering, shame and humiliation to Plaintiff, a person of ordinary sensibilities.

84. As a proximate result, Plaintiff has suffered extreme harm including, but not limited to, injury including pain, humiliation, mental anguish and suffering.

## COUNT VIII—OUTRAGE
### Under Alabama Law
### Against Defendant Montgomery Police Department Officer

85. Plaintiff re-alleges and incorporates by reference paragraphs 11-40 above with the same force and effect as if fully set out in specific detail herein.

86. Under Alabama law, the tort of outrage occurs when "one who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress and for bodily harm resulting from the distress. In order for a plaintiff to recover, the conduct of the defendant must be so outrageous in character

and so extreme in degree as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized society." *Busby v. Truswal Sys. Corp.*, 551 So. 2d 322, 324 (Ala. 1989).

87. Defendant Montgomery Police Department Officer repeatedly assaulted Plaintiff, despite her posing no threat to him and surrendering. In fact, Plaintiff had not committed any articulable crime that would have warranted such treatment by Defendant Officer.

88. Based on the facts as stated in paragraphs 15-26, above, Defendant Officer's actions went beyond all possible bounds of decency, were atrocious and utterly intolerable.

89. As a proximate result, Plaintiff has suffered extreme harm including, but not limited to, injury including pain, humiliation, mental anguish and suffering.

### COUNT IX—NEGLIGENCE
### Under Alabama Law
### Against Defendant Montgomery Police Department Officer

90. Plaintiff re-alleges and incorporates by reference paragraphs 11-40 above with the same force and effect as if fully set out in specific detail herein.

91. Defendant Montgomery Police Department Officer owed a duty to provide ordinary care to Plaintiff.

92. Based on the facts as stated in paragraphs 15-26, above, Defendant Officer breached that duty by committing such horrendous actions against her, including, but not limited to, attacking her, straddling her, tasing her, throwing her against a brick wall, and kicking, kneeing, and punching her while she was handcuffed on the ground.

93. As a proximate result, Plaintiff has suffered extreme harm including, but not limited to, injury including pain, humiliation, mental anguish and suffering.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff respectfully prays that this Court will assume jurisdiction of this action and, after trial, provide relief as follows:

1. Issue an Order requiring the Defendants to make the Plaintiff whole by awarding compensatory damages.

2. Awarding punitive damages against each defendant as allowed by law.

3. An award of litigation costs and expenses, including reasonable attorneys' fees pursuant to 42 U.S.C. Section 1988 and other applicable statutes.

4. Such other and further relief that the Court may deem just and proper.

5. Enjoin the continuation of the unlawful policies, practices and procedures.

**PLAINTIFF DEMANDS TRIAL BY STRUCK JURY
ON ALL ISSUES TRIABLE BY A JURY**

Respectfully submitted,

*/s/Nicki L. Lawsen*
Samuel Fisher
Sidney M. Jackson
WIGGINS, CHILDS, PANTAZIS,
FISHER & GOLDFARB, LLC
301 Nineteenth Street North
Birmingham, Alabama 35203
Telephone: (205) 314-0500
Facsimile: (205) 254-1500
sf@wigginschilds.com
sjackson@wigginschilds.com
nlawsen@wigginschilds.com

H. Lewis Gillis
Kristen J. Gillis
GILLIS LAW GROUP, P.C.
1715 West Second Street
Montgomery, Alabama 36106
(334) 270-1033
hlgillis@gillislawgrouppc.com
kjgillis@gillislawgrouppc.com

**Notice of Lawsuit and Requests for Waivers of Service to Be Sent by Certified Mail to the Following:**

City of Montgomery Attorney's Office
City Hall
103 North Perry Street
Montgomery, Alabama 36104

Ernest Finley
c/o Montgomery Police Department
103 North Perry Street
Montgomery, Alabama 36104

Montgomery Police Department Officer
c/o Montgomery Police Department
103 North Perry Street
Montgomery, Alabama 36104